UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| DEMARCUS BURNETT, | ) | CASE NO.  23-10105-LRC |
| | ) | |
| Debtors. | ) | JUDGE RITCHEY-CRAIG |

## DEBTOR'S MOTION TO SELL PROPERTY OF THE ESTATE

COME NOW Demarcus Burnett, by and through the undersigned counsel, and files this Motion to Sell Property of the Estate ("Motion"), showing this Honorable Court the following:

1.

The Debtor filed a Petition constituting an Order for Relief under Title 11 U.S.C. Chapter 13 on January 27, 2023.

2.

This motion is brought pursuant to 11 U.S.C. § 105, 11 U.S.C. §§ 363 and 1303 and FRBP 2002 and 6004.

3.

Debtor's proposed Chapter 13 Plan calls for payments to the Standing Chapter 13 Trustee in the amount of $2,750.00 monthly. The plan is scheduled to pay 100% of all filed claims.

4.

Debtor has resided at 112 Wellington Manor, Sharpsburg, Coweta County, Georgia 30277 as his primary residence. Debtor no longer has the ability to maintain the ongoing contractual monthly mortgage payments and to maintain a confirmable chapter 13 plan payment. Debtor is seeking alternative and cheaper housing arrangements.

5.

Selling this home, at a loss, but with approval of his first (1st) priority secured creditor, *short sale*, would be in the best of interests of all parties as the lender will be made whole, the debtor will be able to fund his chapter 13 plan and no creditors will be negatively affected as the debtor will not receive any funds from the sale of the real property.

6.

As evidenced in the attached Ex. A, the debtor has a contract to sell the property for $450,000.00. The first (1st) priority secured lender is Rushmore Loan Management Services, LLC as servicer for U.S. Bank Trust National Association, as Trustee of the LB-Cabana Series IV Trust. ("Lender"). *See*, Proof of Claim 9-1. Lender has a secured claim against the property in the express amount of $442,346.05. Effectively, there is no equity in this property and the debtor will not receive any funds from the sale of this property.

7.

The debtor does not have any relationship to the bona fide purchaser: Anselmo Lozano. Similarly, the debtor does not have any prior relationship with the Buyer's broker: Watkins Real Estate Associates. As a condition of the sale of the property, the debtor is required to pay the two (2) percent (%) commission of buyer's agent: Watkins Real Estate & Associates.

WHEREFORE, Debtors pray:

(a)     That this "Motion" be filed, read and considered;

(b)     That the Debtor be allowed to sell the aforementioned residential home with the aforementioned terms and conditions; and

(c)     That this Honorable Court grant such other and further relief as it may deem just and proper.

This 13th day of April 2023.

Respectfully Submitted,

THE BOONE FIRM, P.C.

*/s/Harold Boone, Jr., Esq.*
Harold Boone, Jr.
Attorney for the Debtor
Bar No. 168008
100 Hartsfield Center Parkway, Suite 500
Atlanta, GA 30354
Tel: (470) 765-6899
Fax: (470) 745-6047
hboonejr@boonefirm.com

<u>Ex. A</u>

Residential Purchase & Sale Agreement

# PURCHASE AND SALE AGREEMENT

WATKINS REAL ESTATE ASSOCIATES

Offer Date: _____ 3/6/2023 _____



*Georgia*REALTORS®

**2023 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

   a. **Property Identification: Address:** ___112___ ___Wellington Manor Drive___
   City ___Sharpsburg___, County ___Coweta___, Georgia, Zip Code ___30277___
   MLS Number: _____ Tax Parcel I.D. Number: _____ ___132  6104 080___

   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☐ (1) attached as an exhibit hereto;
   ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
   ☒ (3) the same as described in Deed Book ___4750___, Page ___652___, et. seq., of the land records of the above county; **OR**
   ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
   Lot _____, Block _____, Unit _____, Phase/Section _____
   of _____ Subdivision/Development, according to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ ___450000___

3. **Closing Costs.**
   **Seller's Contribution at Closing: $** ___0___

4. **Closing Date and Possession.**
   Closing Date shall be _____ ___4/5/2023___ _____ with possession of the Property transferred to Buyer
   ☒ upon Closing OR ☐ ___ days after Closing at ___ o'clock ☐ AM OR ☐ PM (attach F219 Temporary Occupancy Agreement).

5. **Closing Law Firm.**
   ___Wessels & Gerber PC-Stockbridge___
   **Phone Number:** ___678 774 7460___

6. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.) ___Wessels & Gerber PC___

7. **Earnest Money.** Earnest Money shall be paid by ☐ check ☐ ACH ☐ cash or ☒ wire transfer of immediately available funds as follows:
   ☐ a. $_____ as of the Offer Date.
   ☒ b. $___4000___ within ___3___ days from the Binding Agreement Date.
   ☐ c. _____

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of ___7___ days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
   (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
   (2) shall pay directly to Seller additional option money of $_____ ___N/A___ by ☐ check ☐ ACH or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; OR ☐ within ___N/A___ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) OR ☒ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Buyer's Broker** is ___Watkins Real Estate Associates___ and is:
    (1) ☒ representing Buyer as a client.
    (2) ☐ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Buyer.

    b. **Seller's Broker** is ___N/A___ and is:
    (1) ☐ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Seller.

    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    ___N/A___

11. **Time Limit of Offer.** The Offer set forth herein expires at ___8___ o'clock ___p___.m. on the date ___3/6/2023___.

Buyer(s) Initials _____ *AM* | *RТС* _____     Seller(s) Initials _____ *MB* _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ___Robert Negrin___ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.

TRANSACTIONS

B. **FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**

1. **Purchase and Sale.**

    a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.

    b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.

    c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**

    a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction, including without limitation, any commission obligations of Buyer. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents; (2) for Seller not attending the closing in person; and (3) payoff and proceeds handling and delivery.

    b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein; and (4) all other title fees and post-closing fees.

    c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. Notwithstanding any provision to the contrary, in the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing. The liability to the county and if applicable, city, in which the Property is located for ad valorem real property taxes for the year in which the Property is sold shall be assumed by Buyer upon the Closing of the Property. Buyer agrees to indemnify Seller against any and all claims of the county and if applicable, city, for unpaid ad valorem real property taxes for the year in which the Property is sold.

4. **Closing Date and Possession.**

    a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (including in transactions where the financing contingency has expired) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.

    b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Closing Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing. In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer in preparing the Closing documents, attempting to clear title of the Property to the satisfaction of the title insurance company, conducting the Closing, disbursing funds according to the settlement statement signed by the parties and closing attorney, timely recording deeds and issuing an owner's title insurance policy. Other than those services specifically listed above, nothing herein shall obligate the closing attorney to perform other legal services, including, but not limited to, certifying or warranting title of the Property, for the Buyer, except pursuant to a separate engagement agreement signed by the closing attorney and the Buyer.

Copyright© 2023 by Georgia Association of REALTORS®, Inc.                F201, Purchase and Sale Agreement, Page 2 of 9, 01/01/23

6. **Holder of Earnest Money.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving the earnest money. Such charge shall be collected separately from the payment of earnest money. The earnest money will be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check or pays with an ACH for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check or ACH has cleared the account on which the check was written or from which the ACH was sent. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages (collectively, "Claims") arising out of the performance by Holder of its duties, including Claims caused, in whole or in part, by the negligence of the Holder; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Buyer's Right to Inspect Property:** Unless otherwise specified herein, the Property is being sold in "as-is" condition with any and all faults. Therefore, Buyer and/or Buyer's representative(s) have the right to carefully inspect the Property to make sure it meets the needs of the Buyer. **If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.**
   b. **Buyer's Right to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer is solely responsible for becoming familiar with neighborhood conditions of concern to Buyer that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Buyer's Inspection Rights Continue through Closing:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the continuing right through Closing to enter the Property at Buyer's expense and at reasonable times to, among other things, and without limitation, conduct inspections, examinations, evaluations, appraisals, surveys and tests, meet contractors and vendors, measure for renovations, determine the condition of the Property and confirm that any agreed upon repairs have been made. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections.
   d. **Buyer's Inspection Indemnification Obligations: Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages related to the exercise of the above inspection rights by Buyer and Buyer's representatives, and Buyer shall promptly pay Seller the actual cost to restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was prior to such testing or evaluations.**

e. **Lead-Based Paint Hazard Evaluation:** If any portion of the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an Exhibit to the Agreement. Buyer shall have the right to conduct a lead hazard evaluation within ten (10) days from the Binding Agreement Date (or other mutually agreed upon time period) and to terminate this Agreement without penalty upon notice to Seller if lead-based paint and/or lead hazards are found (unless these rights are waived by Buyer in the Lead-Based Paint Exhibit (F316)). If the Lead-Based Paint Exhibit (F316) gives Buyer the right to terminate this Agreement if lead-based paint or lead hazards are found and such notice of termination is not given within ten (10) days from Binding Agreement Date (or other mutually agreed upon time period), the right to terminate for lead-based paint and/or lead hazards shall be waived.

f. **Due Diligence Period:** If the Property is being sold subject to a Due Diligence Period, then: a) this Agreement shall be an option contract during which time Buyer shall have the option, for any reason or for no reason, to terminate this Agreement upon notice to the Seller given prior to the expiration of the Due Diligence Period, in which case Buyer shall be entitled to a return of Buyer's earnest money without penalty; b) Buyer may, during the Due Diligence Period, seek to amend this Agreement to address any concerns Buyer has with the Property or this Agreement; and c) if Buyer has not terminated this Agreement as set forth above, Buyer shall accept the Property in "as-is" condition, subject to any amendment to this Agreement to address concerns agreed to by the parties.

g. **Seller's Duty to Disclose:** Seller shall disclose to Buyer any and all known latent or hidden defects in the Property that could not be discovered by the Buyer during a reasonably careful inspection of the Property.

h. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

i. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to Closing unless otherwise agreed to in writing by the Buyer and Seller.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**
   a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
   **(1) No Agency Relationship:** Buyer and Seller acknowledge that: a) if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party; and b) if the same brokerage firm is representing one party as a client and working with the other party as a customer, the Broker and all of Broker's affiliated licensees are representing the client.
   **(2) Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
      i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
         (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
         (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
         (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
         (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
      ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
   b. **Brokerage:** Unless otherwise specified herein, the real estate commissions owing to the Seller's Broker and Buyer's Broker, if any, are being paid pursuant to separate brokerage engagement agreements. Buyer and Seller agree that any commissions to be paid to Broker(s) shall be shown on the settlement statement and collected by closing attorney as a pre-condition to Buyer and Seller closing on the Property so long as the same is permitted by Buyer's mortgage lender, if any. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s). If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein. The broker(s) are express third-party beneficiaries to this Agreement.

Copyright© 2023 by Georgia Association of REALTORS®, Inc.     F201, Purchase and Sale Agreement, Page 4 of 9, 01/01/23

c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

1. **Notices.**
   a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
   b. **Delivery of Notice:** A notice to a party shall be deemed delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein) even if it is not opened by the recipient. Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).
   c. **When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party for the limited purpose of receiving notice and such notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein) even if it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
   a. **Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.
   b. **Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.
   c. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this Agreement the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.
   d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

Copyright© 2023 by Georgia Association of REALTORS®, Inc.  F201, Purchase and Sale Agreement, Page 5 of 9, 01/01/23

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement or Seller's Disclosure of Latent Defects and Fixtures Checklist) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially destroyed prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**

   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

   b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.

   c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

   d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

   e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller (SS611) which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.

   f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

   g. **FIRPTA Affidavit:** Unless Seller is a "foreign person", as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, Seller shall deliver to the closing attorney at Closing a FIRPTA (Foreign Investment in Real Property Tax Act) Affidavit indicating that Seller is not a "foreign person". If Seller is a "foreign person", additional taxes may need to be withheld at Closing.

   h. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

   i. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

   j. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept notices on behalf of a party (but not send notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court or arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.

**k. Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes notice of the Binding Agreement Date to the other party.

**l. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving notice of Binding Agreement Date, the party objecting shall send notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

**m. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:
(1) Handwritten changes shall control over pre-printed or typed provisions;
(2) Exhibits shall control over the main body of the Agreement;
(3) Special Stipulations shall control over both exhibits and the main body of the Agreement;
(4) Notwithstanding the above, any amendatory clause in an FHA or VA exhibit shall control over inconsistent or conflicting provisions contained in a special stipulation, another exhibit or the main body of the Agreement.

**n. Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

**o. Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) Buyer's indemnification obligations arising out of the inspection of the Property by Buyer and Buyer's representatives; (5) the section on condemnation; (6) the section on attorney's fees; (7) the obligations of the parties regarding ad valorem real property taxes; and (8) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the Closing.

**p. Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

**q. Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**

   **a. Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

   **b. Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.

   **c. Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

   **d. Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

   **e. Day:** For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

   **f. Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

   **g. Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

6. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

---

Copyright© 2023 by Georgia Association of REALTORS®, Inc.   F201, Purchase and Sale Agreement, Page 7 of 9, 01/01/23

7. **LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):
   a. **SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN** THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THEN THE SUM OF $100; AND
   b. **NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100** FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

8. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.

   ☐ All Cash Sale Exhibit (F401) "_____"
   ☐ Back-up Agreement Contingency Exhibit (F604) "_____"
   ☒ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "___**A**___"
   ☐ Community Association Disclosure Exhibit (F322) "_____"
   ☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"
   ☒ Conventional Loan Contingency Exhibit (F404) "___**B**___"
   ☐ FHA Loan Contingency Exhibit (F407) "_____"
   ☐ Lead-Based Paint Exhibit (F316) "_____"
   ☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
   ☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
   ☐ Legal Description Exhibit (F807 or other) "_____"
   ☐ Loan Assumption Exhibit (F416) "_____"
   ☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "_____"
   ☐ Seller's Property Disclosure Statement Exhibit (F301, F302, F304, F307 or F310) "_____"
   ☐ Survey of Property as Exhibit "_____"
   ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
   ☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
   ☐ VA Loan Contingency Exhibit (F410) "_____"
   ☒ Other **F511 & F107 & Lender Approval** _____

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

1. All parties agree if any contingency periods and/or deadlines in this Agreement, including but not limited to the Due Diligence, Appraisal, & Financing Periods, expire on a Saturday or Sunday, said contingency period and/or deadlines shall be extended to expire on the following business day at 5 p.m. that is not a bank or federal holiday.

2. Seller to have all utilities on until 24 hours after closing.

3. Seller to leave home AND property clean and free of all debris

4. Buyers will do a walk through the day of closing to verify all items in the disclosure, contract, and amendments are left as stated. If the seller enters into a temporary occupancy agreement after closing, sellers will be available the day of move out to do a final walk through with buyers.

5. The Seller agrees to provide a Buyer's Home Protection Plan, Home Warranty. The cost to the Seller will not to exceed $750. The term of the Home Warranty shall be for at least one year from the date of closing. The seller will choose the home warranty.

6. Seller agrees to pay 2% comission to the Buyers Brokerage, Watkins Real Estate & Associates.

☐ **Additional Special Stipulations (F246) are attached.**

Copyright© 2023 by Georgia Association of REALTORS®, Inc.     F201, Purchase and Sale Agreement, Page 8 of 9, 01/01/23

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

## Buyer Acceptance and Contact Information

Authentisign

*Anselmo Manuel Lozano*

1 **Buyer's Signature**

__Anselmo Manuel Lozano__          03/06/2023

Print or Type Name                    Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

▆▆▆▆▆▆▆

Buyer's E-mail Address

Authentisign

*Robin Jessica Lozano*

2 **Buyer's Signature**

__Robin Jessica Lozano__          03/06/2023

Print or Type Name                    Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

▆▆▆▆▆▆▆

Buyer's E-mail Address

☐ **Additional Signature Page (F267) is attached.**

## Seller Acceptance and Contact Information

Authentisign

*Demarcus Burnett*

1 **Seller's Signature**

__Demarcus Burnett__          03/07/2023

Print or Type Name                    Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

▆▆▆▆▆▆▆

Seller's E-mail Address

2 **Seller's Signature**

Print or Type Name                    Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ **Additional Signature Page (F267) is attached.**

## Buyer's Broker/Affiliated Licensee Contact Information

__Watkins Real Estate Associates__

Buyer Brokerage Firm

Authentisign

*Robert Negrin*                   03/06/2023

**Broker/Affiliated Licensee Signature**   Date

__Robert Negrin__          __405940__

Print or Type Name        GA Real Estate License #

__470 373 3007__          __678 271 0319__

Licensee's Phone Number    Fax Number

__rob@shannonsellsteam.com__

Licensee's E-mail Address

__Metro South Association of Realtors__

REALTOR® Membership

__320__    Corporate Center Circle __GA__  __30281__

Broker's Address

__678 272 2576__

Broker's Phone Number    Fax Number

__WPKN01__          __78337__

MLS Office Code    Brokerage Firm License Number

## Seller's Broker/Affiliated Licensee Contact Information

__N/A__

Seller Brokerage Firm

**Broker/Affiliated Licensee Signature**   Date

Print or Type Name        GA Real Estate License #

Licensee's Phone Number    Fax Number

Licensee's Email Address

REALTOR® Membership

Broker's Address

Broker's Phone Number    Fax Number

MLS Office Code    Brokerage Firm License Number

__Binding Agreement Date__: The Binding Agreement Date in this transaction is the date of _____
and has been filled in by _____.

Copyright© 2023 by Georgia Association of REALTORS®, Inc.

TRANSACTIONS

<u>Ex. B</u>

Disclosure Statement & Itemization

# Estimated
# Closing Disclosure

This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.

## Closing Information

| | |
|---|---|
| **Date Issued** | |
| **Closing Date** | 04/05/2023 |
| **Disbursement Date** | 04/05/2023 |
| **Settlement Agent** | Wessels & Gerber, P.C. |
| **File #** | 23HC-01883 |
| **Property** | 112 Wellington Manor Drive Sharpsburg, GA 30277 |
| **Sale Price** | $450,000 |

## Transaction Information

| | |
|---|---|
| **Borrower** | Anselmo M. Lozano and Robin J. Lozano |
| **Seller** | Demarcus Burnett 112 Wellington Manor Drive Sharpsburg, GA 30277 |
| **Lender** | Bank of America, N.A. |

## Loan Information

| | |
|---|---|
| **Loan Term** | 30 years |
| **Purpose** | Purchase |
| **Product** | |
| **Loan Type** | [X] Conventional  [ ] FHA  [ ] VA  [ ] _____ |
| **Loan ID #** | 102638863 |
| **MIC #** | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $360,000 | **NO** |
| **Interest Rate** | 0% | **NO** |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $0.00 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| Payment Calculation | Years 1-30 | |
|---|---|---|
| Principal & Interest | $0.00 | |
| Mortgage Insurance | + | - |
| Estimated Escrow *Amount can increase over time* | + | - |
| **Estimated Total Monthly Payment** | $0 | |

| | | This estimate includes | In escrow? |
|---|---|---|---|
| **Estimated Taxes, Insurance & Assessments** *Amount can increase over time* *See page 4 for details* | $0 a month | [ ] Property Taxes [ ] Homeowner's Insurance | |

See Escrow Account on page 4 for details. You must pay for other property costs separately.

## Costs at Closing

| | | |
|---|---|---|
| **Closing Costs** | $5,263.00 | Includes $2,311 in Loan Costs + $2,952 in Other Costs. See page 2 for details. |
| **Cash to Close** | $90,228.30 | Includes Closing Costs. See Calculating Cash to close on page 3 for details. |

# Closing Cost Details

| Loan Costs | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| | | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | | **$0.00** | | | | |
| 01 | % of Loan Amount (Points) | | | | | |
| 02 | Administration Fee | | | | | |
| 03 | Processing Fee to Bank of America, N.A. | | | | | |
| 04 | Tax Service Fee to Bank of America, N.A. | | | | | |
| 05 | Underwriting Fee | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$0.00** | | | | |
| 01 | Appraisal Fee to Bank of America, N.A. | | | | | |
| 02 | Credit Report to Bank of America, N.A. | | | | | |
| 03 | | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$2,311.00** | | | | |
| 01 | Title - Attorney Fee to Wessels & Gerber, P.C. | $800.00 | | | | |
| 02 | Title - CPL Premium Fee to Connecticut Attorney's Title Insurance Comp | $50.00 | | | | |
| 03 | Title - Lender's Title Insurance to Wessels & Gerber, P.C. | $1,081.00 | | | | |
| 04 | Title - Technology Fee to Wessels & Gerber P.C. | $75.00 | | | | |
| 05 | Title - Title Binder to Wessels & Gerber, P.C. | $50.00 | | | | |
| 06 | Title - Title Exam Fee to Wessels & Gerber, P.C. | $225.00 | | | | |
| 07 | Title - Wire Fee to Wessels & Gerber, P.C. | $30.00 | | | | |
| 08 | | $0.00 | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$2,311.00** | | | | |
| Loan Costs Subtotals (A + B + C) | | $2,311.00 | | | | |

| Other Costs | | | | | | |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$1,610.00** | | | | |
| 01 | Recording Fees          Deed: $25.00 Mortgage: $25.00 | $50.00 | | | | |
| 02 | e-Recording & Processing to Simplifile / Wessels & Gerber, P.C. | $20.00 | | | | |
| 03 | GRMA Fee to Bank of America, N.A. | $10.00 | | | | |
| 04 | State Transfer Tax/Intangible Tax to Clerk of the Circuit Court | $1,530.00 | | | | |
| **F. Prepaids** | | **$0.00** | | | | |
| 01 | Homeowner's Insurance Premium (12 mo.) | | | | | |
| 02 | Mortgage Insurance Premium (   mo.) | | | | | |
| 03 | Prepaid Interest (       per day from 4/5/2023 to 5/1/2023) | $0.00 | | | | |
| 04 | Property Taxes (   mo.) | | | | | |
| 05 | | | | | | |
| **G. Initial Escrow Payment at Closing** | | **$0.00** | | | | |
| 01 | Homeowner's Insurance | | | | | |
| 02 | Mortgage Insurance | | | | | |
| 03 | Property Taxes | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | Aggregate Adjustment | | | | | |
| **H. Other** | | **$1,342.00** | | | | |
| 01 | Commission - Listing Agent | | | | | |
| 02 | Commission - Selling Agent to Watkins Real Estate Associates | | | | | |
| 03 | Home Warranty | | | | | |
| 04 | Title - Owner's Title Insurance (optional) to Wessels & Gerber, P.C. | $1,342.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$2,952.00** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $2,952.00 | | | | |
| | | | | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$5,263.00** | | | | |
| Closing Costs Subtotals (D + I) | | $5,263.00 | | | | |
| Lender Credits | | | | | | |

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $0 | $5,263.00 | YES |
| Closing Costs Paid Before Closing | $0 | $0 | NO |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $0 | $90,000.00 | YES |
| Deposit | $0 | -$4,000.00 | YES |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | $0 | $0 | NO |
| Adjustments and Other Credits | $0 | -$1,034.70 | YES |
| **Cash to Close** | $0 | $90,228.30 | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

**BORROWER'S TRANSACTION**

| K. Due from Borrower at Closing | $455,263.00 |
|---|---|
| 01 Sale Price of Property | $450,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $5 263 00 |
| 04 | |
| **Adjustments** | |
| 05 | |
| 06 | |
| 07 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 08 City/Town Taxes | |
| 09 County Taxes | |
| 10 Assessments | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $365,034 70 |
|---|---|
| 01 Deposit | $4,000.00 |
| 02 Loan Amount | $360,000.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |
| **Other Credits** | |
| 06 | |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| **Adjustments for Items Unpaid by Seller** | |
| 12 City/Town Taxes | |
| 13 County Taxes  01/01/23 to 04/05/23 | $1,034.70 |
| 14 Assessments | |
| 15 | |
| 16 | |
| 17 | |

| CALCULATION | |
|---|---|
| Total Due from Borrower at Closing (K) | $455,263.00 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$365,034.70 |
| **Cash to Close** [x] From [ ] To Borrower | $90,228.30 |

**SELLER'S TRANSACTION**

| M. Due to Seller at Closing | $450,000.00 |
|---|---|
| 01 Sale Price of Property | $450,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 09 City/Town Taxes | |
| 10 County Taxes | |
| 11 Assessments | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | $1,034.70 |
|---|---|
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14 City/Town Taxes | |
| 15 County Taxes  01/01/23 to 04/05/23 | $1 034 70 |
| 16 Assessments | |
| 17 | |
| 18 | |
| 19 | |

| CALCULATION | |
|---|---|
| Total Due to Seller at Closing (M) | $450,000.00 |
| Total Due from Seller at Closing (N) | -$1,034.70 |
| **Cash** [ ] From [x] To Seller | $448,965.30 |

# Additional Information About This Loan

## Loan Disclosures

### Assumption
If you sell or transfer this property to another person, your lender
- [ ] will allow, under certain conditions, this person to assume this loan on the original terms.
- [x] will not allow assumption of this loan on the original terms.

### Demand Feature
Your loan
- [ ] has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
- [x] does not have a demand feature.

### Late Payment
If your payment is more than          days late, your lender will charge a late fee of .

### Negative Amortization (Increase in Loan Amount)
Under your loan terms, you
- [ ] are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and, your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- [ ] may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- [x] do not have a negative amortization feature.

### Partial Payments
Your lender
- [ ] may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
- [ ] may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
- [ ] does not accept any partial payments.
If this loan is sold, your new lender may have a different policy.

### Security Interest
You are granting a security interest in 112 Wellington Manor Drive, Sharpsburg, GA 30277.

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account
**For now,** your loan
- [ ] will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: |
| | | You may have other property costs. |
| Initial Escrow Payment | | A cushion for the escrow account you pay at closing.  See Section G on page 2. |
| Monthly Escrow Payment | | The amount included in your total monthly payment. |

- [x] will not have an escrow account because [ ] you declined [x] your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $0 00 | Estimated total amount over year 1.  You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | $0.00 | |

### In the future,
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

**Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled.

**Finance Charge.** The dollar amount the loan will cost you.

**Amount Financed.** The loan amount available after paying your upfront finance charge.

**Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate

**Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount.

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,

☐ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.

☒ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

|  | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | Bank of America, N.A. |  | Watkins Real Estate Associates |  | Wessels & Gerber, P.C. |
| **Address** | 4500 Amon Carter Blvd TX2-979-01-02 Fort Worth, TX 76155 |  | 320 Corporate Center Ct Stockbridge, GA 30281 |  | 810 Jackson St. Locust Grove, GA 30248 |
| **NMLS ID** |  |  | WTKN01 |  |  |
| **GA License ID** |  |  | 78337 |  | 2018045 |
| **Contact** |  |  | Robert Negrin |  | Savannah Waldrop |
| **Contact NMLS ID** |  |  |  |  |  |
| **Contact GA License ID** |  |  | 405940 |  | 237301 |
| **Email** |  |  | Rob@ Shannonsellsteam.com |  | savannah@ wesselsandgerber.com |
| **Phone** |  |  | 470-373-3007 |  |  |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_____ (SEAL)     _____     _____ (SEAL)     _____
Anselmo M. Lozano     Date     Robin J. Lozano     Date

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| DEMARCUS BURNETT, | ) | CASE NO.  23-10105-LRC |
| | ) | |
| Debtors. | ) | JUDGE RITCHEY-CRAIG |

## <u>NOTICE OF HEARING ON DEBTOR'S<br>MOTION TO SELL PROPERTY OF THE ESTATE</u>

**PLEASE TAKE NOTICE** that the Debtor in the above-referenced matter filed a motion seeking permission to sell residential real property, property of the estate, located at 112 Wellington Manor, Sharpsburg, Coweta County, GA 30277.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion to Sell Property of the Estate at the following number: (toll-free number*:* **833-568-8864***;* meeting id: **161 346 1602)** at **9:15 am** on **May 9, 2023** in **2nd Floor Courtroom**, Lewis R. Morgan Federal Building and United States Courthouse, Newnan Division - 2nd Floor Courtroom, 18 Greenville Street, Newnan, GA 30263.

**Matters that need to be heard further by the Court may be heard by Telephone, by Video Conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial Telephonic hearing.**

**Please review the "Hearing Information" tab on the Judge web page, found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information**

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303.

This 13th day of April 2023.

Respectfully Submitted,

THE BOONE FIRM, P.C.

*/s/Harold Boone, Jr., Esq.*
Harold Boone, Jr.
Attorney for the Debtor
Bar No. 168008
100 Hartsfield Center Parkway, Suite 500
Atlanta, GA 30354
Tel: (470) 765-6899
Fax: (470) 745-6047
hboonejr@boonefirm.com

Case 23-10105-lrc    Doc 20    Filed 04/13/23    Entered 04/13/23 17:15:46    Desc Main
Document    Page 22 of 25

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| DEMARCUS BURNETT, | ) | CASE NO.  23-10105-LRC |
| | ) | |
| Debtors. | ) | JUDGE RITCHEY-CRAIG |

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify under penalty of perjury that on this day I served the following parties with a copy of the aforementioned documents by placing true copies of same in the United States Mail with adequate postage affixed to ensure delivery, addressed to:

Melissa J. Davey
Melissa J. Davey, 13 Trustee
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

U.S. Trustee
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

U.S. Bank Trust National Association, as Trustee of the LB-Cabana Series IV Trust
c/o Laura Grifka, Esq.
McMichael | Taylor | Gray, LLC
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092

See, Attached Exhibit A for additional creditors served.

This 13th day of April 2023.

Respectfully Submitted,

THE BOONE FIRM, P.C.

*/s/Harold Boone, Jr., Esq.*
Harold Boone, Jr.
Attorney for the Debtor
Bar No. 168008

100 Hartsfield Center Parkway, Suite 500
Atlanta, GA 30354
Tel: (470) 765-6899
Fax: (470) 745-6047
hboonejr@boonefirm.com

3E-3
se 23-10105-lrc
rthern District of Georgia
wnan
Apr 13 17:10:54 EDT 2023

195 Baycroft Road Suite 3
Newnan, GA 30265-1828

PO BOX 1201
Tewksbury, MA 01876-0901

rold L Boone
e Boone Firm, P.C.
0 Hartsfield Center Parkway
ite 500
lanta, GA 30354-1377

Bridgecrest
7300 Hampton Avenue
Mesa, AZ 85209-3324

Bridgecrest Acceptance Corporation
AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Marcus Antoine Burnett
2 Wellington Manor
arpsburg, GA 30277-3500

Capital One N.A.
by American InfoSource as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Carvana, LLC / Bridgecrest c/o AIS Portfol
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

ncord Management LTD
05 Maitland Center Parkway Suite A
itland, FL 32751-4135

Melissa J. Davey
Standing Chapter 13 Trustee
Suite 2250
233 Peachtree Street NE
Atlanta, GA 30303-1509

Dept. of Education/Aidvant
1891 Metro Center Drive
Reston, VA 20190-5287

scover Bank/Discover Products Inc
). Box 3025
w Albany, Oh 43054-3025

Georgia Department of Revenue
Suite 9100 1900 Century Boulevard, NE
Atlanta, GA 30345-3307

Laura A. Grifka
McMichael Taylor Gray, LLC
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092-2871

ternal Revenue Service
tn: Office of Chief Counsel
1 W. Peachtree Street, NW Ste. 1400
lanta, GA 30308

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

Navy Federal Credit Union
P.O. Box 3000
Merrifield, VA 22119-3000

vy Federal Credit Union
BOX 3100
rrifield, VA 22119-3100

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Remedy Home Solutions, LLC
1273 Bullsboro Drive
Newnan, GA 30265-2139

nchrony Bank
PRA Receivables Management, LLC
Box 41021
rfolk, VA 23541-1021

U.S. Bank Trust National Association, as Tru
c/o Rushmore Loan Management Services LL
P.O. Box 55004
Irvine, CA 92619-5004

US Bank Trust National Association
c/o McMichael Taylor Gray, LLC
3550 Engineering Drive Suite 260
Peachtree Corners, GA 30092-2871

ited States Attorney
rthern District of Georgia
Ted Turner Drive SW, Suite 600
lanta GA 30303-3309

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Box 7999
int Cloud MN 56302-9617

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

)Navy Federal Credit Union            (u)U.S. Bank Trust National Association        End of Label Matrix
).BOX 3000                                                                            Mailable recipients    24
RRIFIELD, VA 22119-3000                                                               Bypassed recipients     2
                                                                                      Total                   26